UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
James M. Henderson,                         )
                                            )
            Plaintiff,                      )
                                            )
     v.                                     )    Civil Action No. 14-2002 (ABJ)
                                            )
United States Department of Justice, *et al.*, )
                                            )
            Defendants.                     )
_____ )

# MEMORANDUM OPINION

This matter is before the Court on the parties' cross-motions for summary judgment [ECF Nos. 12-13]. For the reasons discussed below, the Court will grant summary judgment for defendants.[1]

## FACTUAL BACKGROUND

Plaintiff brought this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, against the United States Department of Justice ("DOJ"), to challenge the response of the Executive Office for United States Attorneys ("EOUSA") to his August 2, 2013 request for information (Request No. 13-3226).[2] *See* Compl. at 1. The "subject" section of the request reads:

> [United States v.] James M. Henderson
> Superceding Indictment Dated 07 Aug 2008
> Case No.: 08-14042-CR-Moore/Lynch(s)
> Stenograph Contract Records FY2008

---

[1] Plaintiff's motion for summary judgment will be denied. It does not comply with Federal Rule of Civil Procedure 56 or Local Civil Rule 7(h), and the arguments he presents are duplicative of the arguments he raises in other filings.

[2] Eric H. Holder, Jr., former Attorney General of the United States, is not a proper party to this FOIA action and he will be dismissed as a party defendant. *See Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006).

USAO – Southern District of Florida – West Palm Beach

Mem. of P. & A. in Support of Defs.' Mot. for Summ. J., Decl. of Vinay J. Jolly ("Jolly Decl."), Ex. A (Freedom of Information Act & Privacy Act Request dated August 2, 2013).  In the body of the request, plaintiff then asks for the following information:

> A full and complete copy of the Stenographic Contract Records that was currently active at the time of the above subject matter, which consist of Form 347/Orders For Supplies Or Services; Form 348/Order For Supplies Or Services Schedule Continuation, and Standard Form 18/Request for Quotation.

Jolly Decl., Ex. A.

EOUSA staff assigned the matter a tracking number (Request No. 13-3226), and referred the matter to United States Attorney's Office for the Southern District of Florida ("USAO/SDFL").[3]  Defs.' Mem., Decl. of Maritza Cuadros ("Cuadros Decl.") ¶ 6; Jolly Decl. ¶ 5.  A search of records maintained by the USAO/SDFL yielded one responsive record, and the EOUSA released it after redacting information under Exemption 7(C).  Jolly Decl. ¶ 7; *see id.*, Ex. E (Letter to plaintiff from Susan B. Gerson, Assistant Director, Freedom of Information & Privacy Staff, EOUSA, dated November 17, 2014) at 1.

After reviewing plaintiff's request in connection with this litigation, the EOUSA released this same page in full.  Jolly Decl. ¶ 11.  In addition, and upon consideration of plaintiff's request for "[a] full and complete copy of Stenographic Contract Records" referencing his "Superceding Indictment 07 Aug 2008 in the Southern District of Florida Case No. 08-14042-CR-Moore/Lynch," Cuadros Decl. ¶ 5, the EOUSA located and released four supplemental pages identified as a "USAO litigation request approving the stenographic services and estimated

---

[3] Under the EOUSA's new automated processing system, plaintiff's request was assigned a new tracking number, Request Number ORACL-2014-01162.  *See* Jolly Decl. ¶ 7 n.2; *see id.*, Ex. E at 1.

expense of transcripts . . . , a stenographic bill . . . , and a record of payment of said bill," *id*. ¶ 13, after having redacted certain information under Exemptions 6 and 7(C). Jolly Decl. ¶ 11; *see generally id*., Ex. H (Letter to plaintiff from Susan B. Gerson dated June 5, 2015 and attachments).

## LEGAL STANDARD

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009). On a motion for summary judgment, the Court generally "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Ordinarily, where the agency moves for summary judgment, it must identify materials in the record to demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1). Plaintiff as the non-moving party then must point to specific facts in the record to show that there remains a genuine issue that is suitable for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). But where, in a FOIA case, plaintiff has not provided evidence that an agency acted in bad faith, "a court may award summary judgment solely on the basis of information provided by the agency in declarations," *Moore*, 601 F. Supp. 2d at 12, provided that the declarations are not "conclusory, merely reciting statutory standards, or . . . too vague or sweeping." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987) (footnote omitted).

## ANALYSIS

### I. The Sufficiency of the Search for Responsive Records

"The Court applies a reasonableness test to determine the adequacy of search methodology . . . consistent with the congressional intent tilting in favor of disclosure." *Campbell v. U.S. Dep't*

*of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (citations and internal quotation marks omitted). An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (citing *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982)). The agency may submit affidavits or declarations to explain the method and scope of its search, *see Perry*, 684 F.2d at 126, and such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted). However, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

Here, EOUSA sent plaintiff's FOIA request to the USAO/SDFL, the district that prosecuted plaintiff's criminal case. *See* Jolly Decl. ¶ 12; Cuadros Decl. ¶ 6. The Paralegal Specialist/FOIA Contact at the USAO/SDFL conducted the search for responsive records, Jolly Decl. ¶ 12, beginning on October 23, 2013 with "a query . . . of the Legal Information Office Network System ('LIONS') to identify any USAO/SDFL file(s) pertaining to [plaintiff] and to determine the likely location of such file(s)." Cuadros Decl. ¶ 7. She described LIONS as "the computer case tracking system used by the USAO to track civil, criminal, and appellate investigations and cases and [] used to locate any and all corresponding files." *Id*. Using plaintiff's

name as a search term, the LIONS "query identified a . . . case titled, *United States v. Henderson*, Case No. 08-CR-14042." *Id*. ¶ 8. The FOIA Contact "confirmed that the [USAO/SDFL] handled this case and that [the] office should be in possession of the corresponding records/case file." *Id*. She also found "the internal USAO file identification number [and] other case details," information "necessary to make further inquiries of [the] Administrative/Procurement division[.]" *Id*.

The FOIA Contact contacted "the Supervisory Budget Analyst for the Southern District of Florida," who is the person "familiar with stenograph contract records" and with "access to all records related to . . . services contracted[] and expenses incurred by the Southern District of Florida." *Id*. ¶ 9. Using information about plaintiff's criminal case, the analyst searched the relevant database using a portion of the criminal case number (14042) as a search term. *Id*. ¶¶ 9-10. "All records can be retrieved in this system by case number," and "[t]his query search would prompt the system to provide a report for any and all expenses related to cases containing those numeric digits in the case number." *Id*. ¶ 10. "The resulting report showed only one expense entry for [plaintiff's criminal] case." *Id*. The FOIA Contact received the report on December 4, 2013, *id*. ¶ 11, and on the following day she forwarded the report to the EOUSA, *id*. ¶ 12.

"In connection with this litigation and out of an abundance of caution, [the FOIA Contact] reviewed the previous actions taken by the USAO/SDFL to search for records responsive to [plaintiff's FOIA] request" and met with the Supervisory Budget Analyst on June 3, 2015. *Id*. ¶ 13. The analyst conducted a search of a file room where she "locate[d] an expense file containing the funding paperwork in connection with the expense related to [plaintiff's] case." *Id*. The expense file contained "four additional pages that may be relevant to [plaintiff's] FOIA request, including the USAO litigation request approving the stenograph services and estimated expense of transcripts in the amount of $186.90, a stenograph bill in the actual amount of $19.40, and a

record of payment of said stenograph bill." *Id*. According to the FOIA Contact, "[t]he contents of this expense file are in fact the only records in existence that could possibly related to [plaintiff's] request." *Id*. Further, she explained that, pursuant to USAO/SDFL policy, a litigation request form is prepared to request approval of an expense of $2,500 or less (such as the stenograph expense in plaintiff's case), and in this circumstance, the "litigation request form essentially serves as a substitute for the stenograph contract which [plaintiff] appears to be seeking." *Id*. Lastly, she averred that the systems of records within the USAO/SDFL "likely to contain records responsive to [plaintiff's] FOIA request have been searched. *Id*. ¶ 15.

Plaintiff challenges the sufficiency of the response. He claims that the original criminal indictment against him bore a forged signature, and that the government secured a superseding criminal indictment which did not comply with Federal Rule of Criminal Procedure 6. Pl.'s Opp'n [ECF No. 17] at 1-2.[4] He contends that, absent a valid indictment or superseding indictment, "the court failed to retain jurisdiction over [him] and to convict him" of the crimes with which he was

---

[4] The Court construes "Petitioner[']s Response to DOJ's Summary Judgment and or Motion for Release of Grand Jury Minutes and Transcripts or in the Alternative Immediate Release From Custody Under 42 USC § 1983, 28 USC 2241, 60(B) and or 60(D) Under New Evidence" [ECF Nos. 17-18] as plaintiff's opposition to defendants' motion for summary judgment ("Pl.'s Opp'n").

charged. *Id*. at 2.[5] He faults the EOUSA for its failure to produce "any type of contract or invoice for the Grand Jury proceedings (for either indictment, or arraignment on the original indictment) or Transcripts for the Grand Jury." *Id*. He now asks defendants "to either produce the Grand Jury minutes, or Transcripts of Proceeding and commencement and termination Dates of the Grand Jury[.]" *Id*. at 3. None of these items was called for by Request No. 13-3226, though, and that is the only FOIA request at issue in this case.

The EOUSA is obligated to construe plaintiff's FOIA request liberally. *See generally LaCedra v. Exec. Office for U.S. Attorneys*, 317 F.3d 345, 347-48 (D.C. Cir. 2003). But plaintiff's request does not mention grand jury materials, and even a liberal interpretation of the request would not have prompted the EOUSA to search for grand jury materials. In this case, the EOUSA was "able to determine precisely what records are being requested," *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982) (internal quotation marks, alteration and citation omitted), and if plaintiff happens to "discover[] leads" based on the EOUSA's response to Request No. 13-3226, "he may

---

[5] This theme runs through plaintiff's various filings: generally, he contends that the original indictment was invalid, that the sentencing court no longer had jurisdiction over him, and that his criminal conviction and resulting incarceration violate his right to due process. *See, e.g.,* Pl.'s Mot. for Summ. J. [ECF No. 12] at 2-4 (page numbers designated by ECF); Pl.'s Opp'n at 1-2; "Petitioner's Response to DOJ's Summ[a]ry Judg[]ment and or Motion for Release of Grand Jury Minutes and Transcripts or in the Alternative Immediate Release from Custody Under 42 USC § 1983, 28 USC 2241, 69(B) and or 60(D) Memorandum of Law" [ECF No. 19] at 3-5, 7-8; "Motion to Assert Exhibits and for the Court to Take Judicial Notice" [ECF No. 20] at 1-2. A civil action under FOIA is not the proper means by which to challenge a criminal conviction or sentence, to obtain his release from custody, or to pursue civil rights claims. *See, e.g., Ojo v. Immigration & Naturalization Serv.*, 106 F.3d 680, 683 (5th Cir. 1997) (explaining that the sentencing court is the only court with jurisdiction to hear a defendant's complaint regarding errors that occurred before or during sentencing); *Williams v. Hill*, 74 F.3d 1339, 1340 (D.C. Cir. 1996) (per curiam) ("[I]t is well-settled that a [person] seeking relief from his conviction or sentence may not bring [actions for injunctive and declaratory relief]."); *Szymanski v. DEA*, No. 93-1314, 1993 WL 433592, at *2 (D.D.C. Oct. 5, 1993) (denying prisoner plaintiff's motion to amend complaint "to turn a straightforward F.O.I.A. controversy into an amalgam of constitutionally based claims for money damages and what can only be interpreted as a writ of habeas corpus, challenging the legality of his incarceration").

pursue those leads through a second FOIA request." *Kowalczyk v. Dep't of Justice*, 73 F.2d 386, 389 (D.C. Cir. 1996).

Plaintiff also faults the EOUSA for its alleged failure to produce "stenographer contracts for the Grand Jury Proceedings . . . for Both indictments dated 8/1/2008 and 8/7/2008, Both Arraignments . . . and for any other Court Proceedings of which Petitioner's case was addressed." Pl.'s Surreply at 1.[6]  Instead, the records released to him pertain only to his arraignment on the superseding indictment. *Id*. But the budget analyst's search was conducted using the criminal case number plaintiff provided as a search term, so it was reasonably calculated to locate responsive records. *See* Cuadros Decl. ¶ 10.

Based on the EOUSA's supporting declarations, the Court concludes that the searches for records responsive to Request No. 13-3226 were reasonable under the circumstances of this case.

## II.  Withholdings Under Exemptions 6 and 7(C)

The report initially released to plaintiff in redacted form on November 17, 2014, *see* Jolly Decl., Ex. E, appears to have been released to plaintiff in full.[7]  *See* Jolly Decl. ¶ 11.  The Court therefore focuses its attention on the information withheld from the four-page report released to plaintiff on June 5, 2015, *see id*., Ex. H, comprised of "a court reporter/stenographer bill relating to [plaintiff's] arraignment on his superseding indictment in August 2008, a USAO/SDFL litigation request approving that bill, and vendor payment information," *id*. ¶ 19.  From these records the EOUSA withheld "the names and related telephone and email address identifying

---

[6]  The Court construes plaintiff's "Addendum – Supplement to Petitioner[']s Reply of Defendant[s'] Motion for Summary Judgment" [ECF No. 22] as his surreply.

[7]  Even if the page had not been released in full, the EOUSA need not have done so.  The redacted information "is non-responsive to [p]laintiff's request as it concerns other third party cases and not [plaintiff's] case." Jolly Decl. ¶ 11.

information [about] USAO and related agency attorneys and support employees, including a budget officer and a legal secretary, and United States District Court support clerks and stenograph vendors[.]" *Id.* ¶ 20; *see id.* ¶ 19.

### A. Exemption 7

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure would cause an enumerated harm, *see FBI v. Abramson*, 456 U.S. 615, 622 (1982), including where disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552 (b)(7)(C).

"To show that the disputed documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

The EOUSA's declarant explains that "[t]he mission of the [United States Attorney's Office] is to enforce criminal and civil laws and defend the interests of the United States, to provide Federal leadership in preventing and controlling crime, and to seek punishment for those found guilty of unlawful behavior." Jolly Decl. ¶ 13. Referring to "[t]he USAO's Criminal Case Files (Justice/USA-007)," *id.*, she explains that "[t]he entire responsive case file pertains to the criminal investigation of [plaintiff] and was compiled for criminal law enforcement purposes by the USAO/SDFL, which performs as [its] principal function activities related to the enforcement of criminal laws." *Id.* ¶ 14. Further, the declarant asserts that "[a]ll of the information at issue in this case was compiled during the criminal prosecution of [plaintiff]; and, therefore, it was compiled for law enforcement purposes." *Id.* ¶ 16.

But this general explanation does not necessarily apply to the narrow set of records sought here since the connection to the investigation is highly attenuated. The responsive records pertain to litigation expenses and were maintained in an "expense file containing the funding paperwork in connection with the [stenograph] expense related to [plaintiff's] case." Cuadros Decl. ¶ 13. Nothing in the EOUSA's supporting declarations suggests that this expense information was found in a criminal case file. Notwithstanding the apparent connection between stenographic services and the EOUSA's law enforcement function in prosecuting plaintiff's criminal case, it cannot be said that these expense-related records fall within the scope of Exemption 7.

### B. Exemption 6

The EOUSA also relies on Exemption 6 with respect to the redacted third-party information. *See* Jolly Decl. ¶ 23.

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Court's first task is to determine whether the responsive records are personal, medical or similar files. *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008). If so, the Court next determines whether disclosure of the third-party information "would constitute a clearly unwarranted invasion of personal privacy." *Id.* (quoting 5 U.S.C. § 552(b)(6)). "This second inquiry requires [the Court] to balance the privacy interest that would be compromised by disclosure against any public interest in the requested information." *Id.* (citations omitted). The only relevant public interest in this context harkens back to the principal purpose of the FOIA: to "shed[] light on an agency's performance of its statutory duties[.]" *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762 (1989).

Protection under Exemption 6 is not limited to "a narrow case of files," and instead "cover[s] detailed Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982). In other words, Exemption 6 is designed "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information" maintained in government records, *id*. at 599, regardless of "the label on the file," *id*. at 601 (citation omitted). The Court is satisfied that "the names and related telephone and email identifying information" about government employees and stenograph court reporters, *see* Jolly Decl. ¶ 20, qualify as "similar files" insofar as this information can be identified as applying to particular individuals.

The parties do not dispute that the third parties mentioned in the responsive records have a privacy interest in their personal information, and that their privacy interest is substantial. *See Multi Ag Media*, 515 F.3d at 1229 ("A substantial privacy interest is anything greater than a *de minimis* privacy interest.") (citation omitted). The declarant asserts that disclosure of the third-party information "in the context of a criminal investigation could reasonably be expected to cause embarrassment and humiliation, and thus constitute an unwarranted invasion of personal privacy." Jolly Decl. ¶ 17; *see id*. ¶¶ 20-21. Although this argument is less compelling in this instance because the relevant records were not compiled for law enforcement purposes, it is apparent that the third parties' privacy interest is greater than *de minimis*. *See Reporters Comm.*, 489 U.S. at 762 (discussing an individual's interest "in avoiding disclosure of personal matters").

The Court of Appeals instructs:

> The public interest to be weighed against the privacy interest in this balancing test is the extent to which disclosure would serve the core purposes of the FOIA by contribut[ing] significantly to public understanding of the operations or activities of the government. Thus, unless a FOIA request advances the citizens' right to be informed about what their government is up to, no relevant public interest is at issue.

11

*Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33-34 (D.C. Cir. 2002) (citations and internal quotation marks omitted) (alteration in original). Defendants assert that there is "no legitimate public interest to be served in the disclosure of the identity and related identifying information of the [third parties mentioned in the responsive records] because [disclosure] will not shed light on the operations and activities of the federal government." Jolly Decl. ¶ 20; *see id.* ¶¶ 17, 21, 23. And plaintiff fails to identify any public interest to be served by the disclosure of the protected third-party information.

Therefore, the Court concludes that the EOUSA properly withheld the third-party information under Exemption 6. *See, e.g., Cleveland v. United States*, __ F. Supp. 3d __, __, 2015 WL 5313411, at *11 (D.D.C. Sept. 11, 2015) (withholding mobile phone number of a U.S. government employee); *Rollins v. U.S. Dep't of State*, 70 F. Supp. 3d 546, 553-54 (D.D.C. 2014) (withholding "the name of a third party on a cover memo that transmitted the reports of two deaths abroad"); *Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247, 272 (D.D.C. 2014) (withholding identifying information about consumers who submitted complaints via FTC's website); *Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 67 (D.D.C. 2014) (withholding information about family members of employees, cell phone numbers, personal travel plans and personal email addresses).

### C. Segregability

If a record contains some information that is exempt from disclosure, any reasonably segregable information not exempt from disclosure must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999). The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S. Bureau*

*of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

The EOUSA's declarant avers that "[e]ach document was evaluated to determine if any information could be segregated and released," and that the agency "has segregated and released in full the non-exempt responsive records to Plaintiff." Jolly Decl. ¶ 24. Based on the agency's supporting declarations and the review of the redacted records themselves, the Court concludes that all reasonably segregable information has been released.

## CONCLUSION

Defendants have demonstrated that no genuine issue of material fact as to the EOUSA's compliance with the FOIA remains and that it is entitled to judgment as a matter of law. Accordingly, the Court will grant defendants' motion for summary judgment. An Order is issued separately.

DATE: January 29, 2016

/s/
AMY BERMAN JACKSON
United States District Judge